IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| HIKEEM TORRENCE | : | No. 10-620-13 |

M E M O R A N D U M

**STENGEL, J.**                                                                                           **July 12, 2012**

Presently before the Court is Defendant Hikeem Torrence's Second Motion in Limine.  For the following reasons, Defendant's Motion will be granted in part and denied in part.

**I.   Background**

On September 22, 2010 and September 7, 2011, a federal grand jury returned a seventy-three count indictment and an eighty-nine count superseding indictment, respectively, charging Defendant, Hikeem Torrence, along with nineteen (19) other Defendants with various crimes occurring on or about October 2001 through approximately October 6, 2010.  These criminal acts were committed in and around the Bartram Village Housing Development (BVHD) in Southwest Philadelphia by a criminal enterprise known to law enforcement as the "Harlem Boys."  Throughout the course of the investigation, police and federal authorities obtained and executed numerous search and seizure warrants, which led to the recovery of drugs, drug paraphernalia, drug proceeds, firearms, ammunition, fired cartridge casings, documents, photographs, letters and other mail, and other items.

Members of the enterprise committed, attempted, and threatened to commit acts of violence, including murder, assault, and robbery, to protect and expand the enterprise's criminal operations. The members of the enterprise had varying roles. The Government alleges that Defendant Torrence participated in the "Harlem Boys" as a distributor of illegal narcotics and as a gunman for the enterprise. Torrence is charged with nine (9) counts in the superseding indictment. These counts include charges of conspiracy to participate in a racketeering enterprise under 18 U.S.C. § 1962(d); conspiracy to distribute under 21 U.S.C. § 846; and distribution of cocaine base ("crack") under 21 U.S.C. § 841(a)(1). Torrence has filed five (5) pre-trial motions, which have been briefed by the parties and argued in a pre-trial motions hearing on May 15-16, 2012, where evidence and testimony were provided by the government and counsel on various motions. The motions include a motion to compel discovery (Doc. No. 61),[1] a motion to suppress physical evidence and statements and a motion in limine to exclude evidence (Doc. No. 191),[2] a motion to sever (Doc. No. 300),[3] a motion to deny the admission of tape recordings (Doc. No. 301),[4] and a second motion in limine (Doc. No. 364). This memo will address the Defendant's motion in limine (Doc. No. 364).[5]

---

[1] Defendant's motion for discovery is denied for the reasons set forth in the accompanying July 12, 2012 Order.

[2] Defendant's motion in limine is denied for the reasons set forth in the accompanying July 12, 2012 Order.

[3] Defendant's motion to sever is denied for the reasons set forth in the accompanying July 12, 2012 Order.

[4] Defendant's motion to deny the admission of tape recordings is denied for the reasons set forth in the accompanying July 12, 2012 Order.

[5] In addition to the arguments concerning the photographs, Torrence also argues that two tape recorded conversations between Moten and a confidential informant ("CI") on March 29, 2010 and June 3, 2010 should not be admitted on the basis that they are hearsay. "A statement is not hearsay if . . . (t)he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

## II. Photographic Evidence

Torrence seeks to preclude the Government from introducing photographs taken from his Facebook account.[6] Torrence argues that these photos are irrelevant and unduly prejudicial.[7] Specifically, there are pictures of Torrence smoking a "blunt," which is labeled Exhibit A. In this same photo, Torrence appears to be gesturing with his hands as if he is holding an invisible firearm. Other photos show Torrence "giving the finger" (Exhibit G), pointing an imaginary gun, and making other gestures. He is also depicted sitting or hanging around with other co-defendants and making hand gestures like "giving the finger" or pointing (See Exhibits E, H, I, J, K, L, and O). There is another picture,

---

Fed.R.Evid. 801(d)(2)(E). It is permissible that the Government introduce into evidence otherwise inadmissible declarations of alleged coconspirators "subject to the obligation of the Government, before the case is completed, to establish the existence of the conspiracy and prove aliunde as to every separate defendant." United States v. Continental Group, Inc., 603 F.2d 444, 456 (3d Cir. 1979); United States v. Bey, 437 F.2d 188, 191 (3d Cir. 1971). See also United States v. Geaney, 417 F.2d 1116, 1120 (2d Cir. 1969), Cert. denied, 397 U.S. 1028 (1970) (stating "While the practicalities of a conspiracy trial may require that hearsay be admitted 'subject to connection,' the judge must determine, when all the evidence is in, whether in his view the prosecution has proved participation in the conspiracy, by the defendant against whom the hearsay is offered, by a fair preponderance of the evidence independent of the hearsay utterances.") Given the large amount of interrelated testimony to be considered in this case, I find that any other approach to finding the statements admissible is impractical. Therefore, I will deny the Defendant's motion to suppress the statements made by co-defendant Moten as hearsay.

[6] Torrence also mentions that the photos should be precluded under FRE 404(b). Photographs from social networking sites cannot be admitted to prove bad character. In United States v. Phaknikone, 605 F.3d 1099 (11th Cir. 2010), the Eleventh Circuit held that photographs posted on the defendant's Myspace profile, including a photograph depicting him in a car with a child in the backseat, while holding a handgun, with his tattoos visible, was "classic evidence of bad character, which was offered by the government to prove only 'action in conformity therewith.'" Id. at 1108-09 (quoting Fed. R. Evid. 404(b)). In that instance, the appellate court held that the jury in the defendant's trial on robbery charges could "infer that, because [the defendant] is willing to publish these kinds of photographs online, under an incendiary alias, he is a gangster who is likely to rob banks," an impermissible inference under Rule 404(b). Id. at 1109.

However, when the photographs depict evidence that is intrinsic to the crimes charged, those photographs should be admissible. United States v. Green, 617 F.3d 233, 245 (3rd Cir. 2010). See also United States v. Benford, Civ. A. No. 10-12801, 2011 U.S. App. LEXIS 10783, 2011 WL 2078645, at *3 (11th Cir. May 26, 2011) (non-precedential) (holding that photographs on Myspace showing the defendant with two of the firearms charged in the indictment were probative of his possession of the weapons, and thus admissible as intrinsic evidence not subject to Rule 404(b)). I reject that argument on the basis that the photos E, G, H, I, J, K, L, and O will serve as evidence that is intrinsic to the charged offenses because they help directly prove the charged offenses. See United States v. Green, 617 F.3d 233, 245 (3d Cir. 2010).

[7] Preliminarily, there are fifteen (15) photos, which are labeled A-O. The Government does not intend to offer into evidence photos B, D, F, M, and N, which leaves a total of ten (10) photos (A, C, E, G, H, I, J, K, L, and O).

3

found on Mr. Stokes' Facebook, with the two men and a young lady posed in prison garments and taken inside a correctional facility, which is labeled Exhibit C.

Rule 401 of the Federal Rules of Evidence states:

> Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and  (b) the fact is of consequence in determining the action.

Additionally, Rule 403 of the Federal Rules of Evidence states:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Evidence is "unfairly prejudicial" if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"; "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish"; or "may cause a jury to base its decision on something other than the established propositions in the case."  Carter v. Hewitt, 617 F.2d 961, 972 (3d Cir. 1980).

I find that Exhibit A is unduly prejudicial and should be precluded as evidence at trial.  Even though the Government states it will not mention marijuana in regard to the photo and even calls it a "cigarette," Exhibit A clearly depicts Torrence smoking marijuana.  The Government contends that the photo will be used to show that Torrence was a gunman for the enterprise and that he served to protect the enterprise's interests by threatening violence based on the invisible guns he appears to be holding in the photo.  While these "finger guns" may be minimally probative, the danger of unfair prejudice resulting from the depiction of Torrence smoking "a blunt" substantially outweighs the

4

probative value.  Additionally, the depictions of Torrence with an actual firearm are far more probative and will be found in a number of the remaining photographs.

Exhibit C is also unduly prejudicial.  The orange jumpsuit attire draws the jury's attention to the fact that the Defendant had previously been arrested and incarcerated. This photo was clearly taken in a correctional facility and a limiting instruction would not effectively and realistically neutralize prejudice to defendant.[8]  Both Exhibit A and C have minimal probative value, which the prejudicial effect far exceeds.  Therefore, the motion with regard to these photos is granted.

The remainder of the photos depicting Torrence associating with many of his co-defendants may be introduced as evidence at trial.  In this case, the existence of a conspiracy will be an issue.  Evidence about the existence of a gang is highly probative on the conspiracy issue.  Because these "gang photos" are relevant and probative to that issue and the probative value of these pictures outweighs whatever prejudicial effects, if any, the introduction of the photographs may have, the pictures shall be admitted. Although Torrence may be "giving the finger" or making other gestures, the Government must show, as part of its prima facie case for Count One, that the defendant was employed by or associated with the enterprise.  The photos display solidarity among the Defendant and other co-conspirators.  The remaining pictures also show Torrence within the Bartrum Village Housing Development, which is highly probative of his affiliation with the enterprise.  Specifically, in photos E, J, and O, Torrence is standing outside an

---

[8] See e.g. State v. Burton, 309 N.J. Super. 280, 706 A.2d 1181 (App. Div. 1998), cert. denied, 156 N.J. 407, 719 A.2d 639 (1998) (holding that photographic array depicting defendant and others in orange prison attire should have been excluded from theft trial on ground that its probative value to issue of identification was substantially outweighed by danger of undue prejudice).

apartment that the enterprise allegedly used as a stash house. Additionally, in photos E and J, Torrence is seen with a gun on his right hip.

The only photos that could potentially be prejudicial are those showing the defendant with a gun; the others simply show young men posing for the camera, sometimes with their middle fingers. However, those photos depicting Torrence with a gun are highly probative of his role as a gunman in the enterprise. Each of the remaining photos E, G, H, I, J, K, L, and O depict the defendant in the housing development where much of the criminal activity took place, which is also highly probative. Finally, in order to limit any potential for unfair prejudice, a limiting instruction will be given to the jury concerning the purpose for the introduction of the photographs, which will caution the jury not to consider them as evidence of bad character.

### III. Conclusion

For the reasons stated above, I will grant in part and deny in part the Defendant's Second Motion in Limine (Doc. No.364).

An appropriate Order follows.